UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL REYES SERVIN,<br><br>                              Petitioner,<br><br>              v.<br><br>FERETI SEMAIA et al.,<br><br>                              Respondents. | Case No. 5:26-cv-02745-MAR<br><br>ORDER ON PETITION FOR HABEAS CORPUS |

**I.**

**SUMMARY OF ORDER**

On May 21, 2026, Rafael Reyes Servin ("Petitioner"), by and through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241. ECF Docket Nos. ("Dkt.") 1 ("Pet"). Petitioner argues his detention in Immigration and Customs Enforcement ("ICE") custody violates his Fifth Amendment due process rights, the Maldonado Bautista final judgment, and the Immigration and Nationality Act ("INA"). Petitioner seeks release. Id. at 26.[1] Respondents have filed an Answer. Dkt. 9. For the reasons set forth below, the undersigned **GRANTS** the Petition and **ORDERS** Petitioner's immediate release from custody.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## BACKGROUND[2]

Petitioner was born in Mexico and brought to the United States by his aunt in 2003 when he was approximately three years old.  Pet. at 7.  Upon his arrival in the United States, Petitioner asserts that his aunt presented herself at the border for inspection, was questioned by immigration authorities, presented her travel documents, and was permitted to pass into the United States.  Id. at 7–8.  Respondents contend that Petitioner "entered the United States at an unknown location on an unknown date, without inspection or parole by an immigration officer."  Reply at 3.  Petitioner's mother had arrived in the United States approximately a month before.  Pet. at 8.  Since arriving in the United States, Petitioner has lived continuously at the same address in California, attended public schools since the age of four, and graduated from high school in 2018.  Id.  He has also been employed since the age of 16.  Id.

Petitioner is a recipient of Deferred Action for Childhood Arrivals ("DACA"), which he was initially granted in December 2020, and which was renewed as recently as August 2024.  Id. at 9.  Petitioner's DACA status remains valid through August 11, 2026.  Reply at 3.  Through his DACA status, Petitioner received Employment Authorization, a Social Security number, and a California driver's license.  Pet. at 9.  On April 15, 2026, Petitioner pleaded no contest to a misdemeanor and was placed on one year of supervised probation with a fine and "standard alcohol-program conditions."  Id.

---

[2] The background provided arises from the allegations in the Petition and attached exhibits, which Respondents do not contest unless indicated herein.  The Court considers the undisputed facts alleged by Petitioner to be conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

On December 14, 2025, Petitioner was arrested in a targeted field operation pursuant to a warrant for arrest. Id. at 10. Petitioner was charged as inadmissible as an "alien present in the United States who has not been admitted or paroled." Id. Petitioner is in custody at the Adelanto Detention Center ("ADC"). Id. at 2. Petitioner has not been provided a bond hearing. Id. at 3.

On May 21, 2026, Petitioner, through counsel, filed the instant habeas petition alleging that his detention without a custody determination or bond hearing violates the INA, the Maldonado Bautista final judgment, and the Fifth Amendment's Due Process Clause. Id. at 23–26.

Petitioner asks the Court to order that he be released immediately. Petitioner further asks the Court to order that he was lawfully admitted in 2003 and therefore is not an "applicant for admission," declare that 8 U.S.C. § 1226(a) — and not 8 U.S.C. § 1225(b)(2)(A) — is the appropriate statutory provision that governs Petitioner's detention and eligibility for bond; declare that Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.), and is entitled to the relief commanded by the final judgment in that case; and award costs and attorney's fees. Id. at 26–27.

Respondents filed an answer on May 28, 2026. Dkt. 9, Answer. Respondents acknowledge that "Petitioner appears to be a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz" and argue that Petitioner has not established that Respondents lacked authority to detain him. Id. at 2–4. Thus, the matter stands submitted.

## III.

## LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to

3

aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' "). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## IV.

## DISCUSSION

**A. APPLICABLE LAW**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in

4

Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets

omitted).

8 C.F.R. § 236.23(d) sets the procedures for termination of Deferred Action for Childhood Arrivals status:

> (d) Termination —
> (1) Discretionary termination.  USCIS may terminate a grant of Deferred Action for Childhood Arrivals at any time in its discretion. USCIS will provide a Notice of Intent to Terminate and an opportunity to respond prior to terminating a grant of Deferred Action for Childhood Arrivals, except USCIS may terminate a grant of Deferred Action for Childhood Arrivals without a Notice of Intent to Terminate and an opportunity to respond if the Deferred Action for Childhood Arrivals recipient is convicted of a national security-related offense involving conduct described in 8 U.S.C. 1182(a)(3)(B)(iii), (iv), or 1227(a)(4)(A)(i), or an egregious public safety offense. If USCIS terminates a grant of Deferred Action for Childhood Arrivals without a Notice of Intent to Terminate and an opportunity to respond, USCIS will provide the individual with notice of the termination.

## B. ANALYSIS

### 1. Petitioner's liberty interest

It is undisputed that Petitioner has resided in the United States for over twenty years and his grant of Deferred Action status was renewed in August 2024.  Pet. at 9.  It is undisputed that Petitioner maintains active DACA status.  Answer at 3.  It is further undisputed that Petitioner was also granted a work authorization document based on his deferred action and was permitted to remain out of custody.  Pet. at 9.  Thus, the Court concludes that once Petitioner was granted deferred action, and permitted to remain free from detention, he acquired a liberty interest in remaining released from custody.  See, e.g., A.R. v. Noem, 2026 WL 194850, at *5-6 (C.D. Cal. Jan. 26, 2026) (holding that the petitioner acquired a liberty interest in remaining out of custody based on grant of deferred action and SIJS); accord Escalante Vargas v. Semaia, 2026 WL 1195989, at *3 (C.D. Cal. Mar. 23, 2026); Inland Empire Immigrant Youth Collective v. Nielsen, No. EDCV 17-2048 PSG, 2018 WL 4998230, at *19 (C.D. Cal. Apr. 19, 2018) (holding DACA recipients have protected liberty interest in

6

benefits conferred through deferred action); Juarez v. Noem, No. 2:26-CV-00801-DC-CKD (HC), 2026 WL 799976, at *6 (E.D. Cal. Mar. 23, 2026) ("[O]nce a DACA applicant satisfies enumerated 'objective and non-discretionary criteria,' he 'enjoys significant liberty and property interests, including the right to obtain lawful employment authorization and the right to be considered lawfully present in the United States.'") (quoting Torres v. U.S. Dep't of Homeland Sec., No. 17-cv-01840-JM, 2018 WL 1757668 (S.D. Cal. Apr. 12, 2018)); Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained"); Anderson v. Chernut, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding, in context of petitioner who was granted parole and whose DACA status was terminated due to a DUI conviction, "that the government's knowing decision not to detain an individual creates a liberty interest in their continued release"); Boso v. Warden of the Golden State Annex Det. Facility, No. 1:26-CV-01790-KES-SAB-HC, 2026 WL 1174643, at *3 (E.D. Cal. Apr. 30, 2026), report and recommendation adopted, No. 1:26-CV-01790-KES-SAB (HC), 2026 WL 1389432 (E.D. Cal. May 18, 2026).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Indeed, the Supreme Court has explained that "[t]he defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision)." Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 27 (2020).  "Approval of deferred action status means that, for . . . humanitarian reasons[,] . . . no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." Am.-Arab Anti-Discrimination Comm., 525 U.S. at 484 (internal quotation marks omitted). The Ninth Circuit has described deferred action as a "form of parole and "stay[] of

removal." Lee v. Holder, 599 F.3d 973, 975 (9th Cir. 2010); see also Barahona-Gomez v. Reno, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001) ("Deferred action refers to an exercise of administrative discretion by the [Immigration and Naturalization Services ("INS")] district director under which the INS takes no action to proceed against an apparently deportable alien based on a prescribed set of factors generally related to humanitarian grounds." (internal quotation marks omitted)).

Petitioner's liberty interest is strengthened by the length of time he has been living in the United States. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, Petitioner had been living in the United States out of custody for approximately twenty years, was granted work authorization, maintained lawful employment from the time he was sixteen years old, and has graduated high school and attended college. Pet. at 5–8. Petitioner's history of working in the United States further strengthens his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) (recognizing the petitioner's liberty interest in continued release on bond based on the passage of time where he was able to build a life in the United States for more than two years). Thus, the Court will proceed to analyze whether Petitioner received sufficient due process to protect his liberty interest in remaining out of custody.

Although Respondents contend that they have the authority to detain Petitioner pursuant to the initiation of removal proceedings, they acknowledge that Petitioner maintains valid DACA status, Answer at 3, which both "prevents" his removal and, as discussed above, creates a substantial liberty interest in his release

from custody which must be protected by due process.  See Sepulveda Ayala v. Bondi, 794 F. Supp. 3d 901, 912 (W.D. Wash. 2025) ("[D]eferred action prevents recipients' removal from the United States." (citing Lee v. Holder, 599 F.3d 973, 974-75 (9th Cir. 2010)); see also Alvarado v. Noem, No. 1:25-CV-01959-DJC-CSK, 2026 WL 99885, at *1 (E.D. Cal. Jan. 14, 2026).  It is undisputed that Petitioner was taken into custody prior to his DACA status being terminated.

**2. Due Process**

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest.  See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).  To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Id. at 335.

The Court finds that all three factors support a finding that the government's detention of Petitioner without notification, reasoning, or an opportunity to be heard, and while he maintained valid DACA status, denied Petitioner of his due process rights.  See, e.g., Ramos v. LaRose, No. 26CV0812-LL-VET, 2026 WL 931710, at *3 (S.D. Cal. Apr. 6, 2026) (finding Petitioner with Deferred Action status has liberty interest in remaining free from detention which requires pre-deprivation hearing); Coronado Serrano, 2026 WL 1048348, at *3 ("In applying the Mathews factors, the Court finds that all three factors support a finding that Respondents' revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights."); see also Ligario Hernandez v. Mullin, 2026 WL 846037, at *10 (C.D. Cal. Mar. 24, 2026) ("Respondents would be

permitted, subject to due process limitations, to revoke their BFD determination and grant of deferred action to Petitioner.  However, they may not do so without first providing Petitioner meaningful, pre-deprivation notice and an opportunity to be heard on why his status should not be revoked." (citation omitted)); A.R., 2026 WL 194850, at *5-6 (holding that under the Matthews factors, petitioner was entitled to notice and a pre-deprivation hearing prior to revocation of his deferred action).

First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his deferred action.  See, e.g., Ramos, 2026 WL 931710, at *2.  Freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause."  See Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner was detained without providing him notice or an opportunity to be heard. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community.  Zadvydas v. Davis, 533 U.S. 678, 699 (2001).  But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.  The risk of erroneous deprivation is especially high given that deferred action is similar to a "stay[] of removal," Lee, 599 F.3d 975, and Petitioner's deferred action status has not been terminated.  See Answer at 3.  It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.  Id.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low.  See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Matute, 2025 WL 2817795, at *6; Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps

toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody subject only to any condition of release that was in place prior to Petitioner's detention on December 14, 2025. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Ramos, 2026 WL 931710, at *3 ("The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting release."); accord A.R., 2026 WL 194850, at *8; Escalante Vargas, 2026 WL 1195989, at *4; Coronado Serrano, 2026 WL 1048348, at *4.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's

future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Finally, the Court notes that Respondents admit that Petitioner "appears to be a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025)."  Answer at 2.  They further "acknowledge that Petitioner's claim in this action appears to be subject to the Bautista judgment."  Id. at 3.  On December 18, 2025, the court in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class.  See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge."  Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025).  On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California"

pending a ruling on the Government's motion for a stay pending appeal.  Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026).  Thus, the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2).[3]  See Maldonado Bautista, 2025 WL 3678485, at *1; see also C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).  Indeed, the statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for release on bond, should he be detained in the future. Moreover, Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). See id.  However, Petitioner is also entitled to immediate release from custody based on the violation of his procedural due process rights, as explained above.

The fact that Petitioner could receive a post-deprivation bond hearing while in custody does not remedy the violation of Petitioner's procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond

---

[3] Because the Court concludes that Petitioner is detained under to 8 U.S.C. § 1226(a) and not subject to mandatory detention, pursuant to the Maldonado Bautista judgment, the Court does not reach Petitioner's contention that he is detained under 8 U.S.C. § 1226(a) because he was admitted to the United States under Matter of Quilantan.  See Pet. at 3, 12.

hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court declines to recommend a post-deprivation bond hearing as the remedy for the violation of Petitioner's procedural due process rights in this case.

The Court notes that it will entertain an application by Petitioner requesting an award of reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## IV.

## ORDER

**IT IS THEREFORE ORDERED**:

(2) the Petition is **GRANTED**;

(3) Respondents are **ORDERED** to immediately release **Petitioner Rafael Reyes Servin (A-Number 214-093-752)** from custody subject only to the conditions and requirements of his preexisting release;

(4) Respondents are **ORDERED** to return all of Petitioner's belongings, including his identification documents and Employment Authorization Document;

(5) Respondents are **ORDERED** not re-detain Petitioner unless they first provide seven (7) days' notice of the reason for re-detention and a pre-deprivation bond hearing;

(6) Respondents are **ORDERED** that the pre-deprivation bond hearing occur before a neutral immigration judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community (for the avoidance of doubt, the immigration judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard); and

(7) Respondents are **ORDERED** to file a Notice of Compliance within forty-eight hours of this Order.

Dated:  June 4, 2026

_____

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

15